## In re FARRELL REALTY CO.

(District Court, W. D. Pennsylvania. November 5, 1925.)

No. 11910.

1. **Bankruptcy 43—President of corporation cannot of his own motion lawfully put corporation in bankruptcy by means of voluntary petition.**

President of corporation cannot of his own motion lawfully put corporation in bankruptcy by means of voluntary petition, and if such adjudication is had, and is improvidently made, bankruptcy court has power, on seasonable petition, to vacate adjudication.

2. **Bankruptcy 51—Voluntary adjudication not set aside on petition of corporation or stockholders after rights of innocent purchasers have intervened.**

Where adjudication of corporation was made on voluntary petition, regular on its face and setting forth proper authorization of president by directors to file it, and directors and stockholders, cognizant of facts, stood by for six months without action, and allowed rights of innocent purchasers to be affected, *held*, that adjudication will not be set aside on petition of corporation or stockholders.

3. **Bankruptcy 51—Minority stockholders' petition to set aside adjudication filed six months after adjudication held too late, where rights of innocent purchasers had intervened.**

Adjudication of corporation on voluntary petition, regular on its face and setting forth authorization of president by directors, will not be set aside on petition of minority stockholders, filed six months after adjudication, and after trustee has been elected and part of corporation's property sold to innocent purchasers, whose rights would be materially affected if adjudication was set aside.

4. **Bankruptcy 51—Adjudication not set aside for fraud, because corporation's voluntary petition was filed to prevent state receivership on behalf of minority stockholders.**

Adjudication of corporation will not be set aside for fraud, after partial administration, on showing by minority stockholders that president filed voluntary petition in order to deprive minority stockholders of their remedies under bill in equity in state court to have receiver appointed for corporation, since appointment of receiver under bill alleging insolvency would be basis for involuntary petition, under Bankruptcy Act, § 3a(4), being Comp. St. § 9587.

In Bankruptcy. In the matter of the Farrell Realty Company, bankrupt. On petitions by bankrupt and others to vacate adjudication. Petitions denied.

Benjamin H. Marks and Francis M. Flynn, both of Farrell, Pa., for petitioners Farrell Realty Co. and Freeble.

Herbert T. Ames, of Williamsport, Pa., for minority stockholders.

Louis J. Wiesen, of Sharon, Pa., for trustee.

GIBSON, District Judge. On March 4, 1925, a voluntary petition was filed in above matter, signed "Farrell Realty Co., by James L. Freeble, President." To it was affixed a copy of a resolution of the board of directors of said realty company, authorizing the president to file said petition; said copy having the seal of the company affixed and purporting to be certified as true and correct by J.

F. Laning, secretary. Adjudication duly followed, and on March 20, 1925, Virgil L. Johnson was unanimously elected trustee. After his election the trustee, upon order of the referee, proceeded to advertise and offer at public sale the real estate of the bankrupt. It was put up for sale on several different days, the sale having been continued from time to time. On the various days of sale 192 lots were sold to some 35 purchasers, whose names need not be given. In addition to such sales, James L. Freeble, president of the company, bought 135 lots, at $30 each, at the sale on June 13, 1925, alleging that he bought them as agent of Julia E. Freeble, his wife. At the sale on July 11, 1925, 300 additional lots were bought in the same way for about $19,000, but Mrs. Freeble was unable to make the payments required, and the sale was continued.

A day or two prior to the day of the sale, Julia E. Freeble filed her petition in this court, alleging that she was a stockholder, director, and creditor of bankrupt company, and, in substance, that the corporation was solvent, that James L. Freeble, president, had filed the voluntary petition of the Farrell Realty Company without authority of the directors, that the trustee was improvidently administering the estate, and praying the vacation of the adjudication and the discharge of the trustee. The court granted a rule upon the trustee, with notice to creditors, to show cause why the prayer of the petition should not be granted. On the day fixed for hearing upon the rule a petition, purporting to be the petition of the bankrupt, of like tenor to that of Julia E. Freeble, was filed. The hearing proceeded, but was continued several times to enable petitioner to produce the testimony of several witnesses.

On September 29, 1925, the First National Bank of Williamsport and Mary D. Pyles filed their petition, wherein they alleged that James L. Freeble, president, upon the advice of Virgil L. Johnson, the present trustee, had filed the voluntary petition of the Farrell Realty Company in this court, for the purpose of fraudulently depriving petitioners of relief sought by them in a certain bill of equity pending in the court of common pleas of Mercer county, and prayed the vacation of the adjudication and the discharge of the trustee. Evidence both in support and denial of the averments of these several petitions has been heard and considered by the court.

The following facts, in addition to those above set forth, have been developed:

The Farrell Realty Company, at and pri-

or to March 4, 1925, was a corporation of which James L. Freeble was president, J. F. Laning, secretary, and these two officers, with Julia E. Freeble, were directors. The business of the company had been conducted by James L. Freeble. When the petition in bankruptcy was filed, Julia E. Freeble owned some 80 per cent. of the stock, or that amount of stock was in her name. During the entire existence of the realty company she was under the control of her husband, James L. Freeble, and was accustomed to sign, at his direction, all papers submitted to her without question. J. F. Laning, the secretary, for several months prior to the adjudication, had been a resident of Cleveland, Ohio.

On or about February 4, 1925, the First National Bank of Williamsport and others, minority stockholders, filed a bill in equity in the court of common pleas of Mercer county, against the Farrell Realty Company and its three directors, wherein the directors were charged with fraud in the operation of the company, inter alia, in the conveyance to Julia E. Freeble of certain real estate without adequate consideration. The bill alleged the company to be insolvent, and prayed the appointment of a receiver and a decree for the reconveyance of the real estate conveyed to Julia E. Freeble.

After this bill was filed, James L. Freeble and J. F. Laning, of the realty company, discussed it with counsel for the plaintiffs therein, and stated that they would agree to the appointment of a receiver by the Mercer county court. Their intention in this respect was imparted to Virgil L. Johnson, the present trustee, who protested against it, and pointed out certain advantages which a bankruptcy court would have in the administration of the estate of the realty company, and threatened that he would file an involuntary petition against the company if the contemplated action were taken. Mr. Johnson had, prior to this time, acted as attorney for the realty company in certain, but not all, of its previous litigation. He had not been retained as counsel in the matter then under discussion, and in protesting the contemplated consent to a state court receiver he was acting, as he alleges, as a creditor of the company. The schedules show him a creditor to the amount of $4,382.62.

Subsequent to the conversation with Mr. Johnson, James L. Freeble personally prepared and filed an answer to the bill in equity in Mercer county wherein, in response to the paragraph of the bill alleging the insolvency of the realty company, he stated:

"30. Defendants deny the averments of

paragraph 30 of plaintiffs' bill, excepting that portion of the same relating to the present inability of defendants to pay the corporation's debts."

The name of Francis M. Flynn, Esq., appears as counsel for respondents.

A few days before this answer was filed, Julia E. Freeble and James L. Freeble reconveyed to the realty company the lots and property which were part of the subject-matter of the bill of equity. At about the same time James L. Freeble personally prepared the voluntary petition in bankruptcy of the company and forwarded it to the clerk of this court. On account of the absence of a certified copy of a resolution of the directors authorizing the petition, it was returned to Francis M. Flynn, Esq., whose name appeared thereon as attorney for the petitioner. Mr. Flynn called the matter to the attention of James L. Freeble, who assured him that the directors had passed such a resolution as was required, whereupon Mr. Flynn prepared the certified resolution attached to the petition, signed the name of J. F. Laning, secretary, to the certificate, and delivered the paper to James L. Freeble, who attached the seal of the company to the certificate, and returned the petition, with the certificate attached, to the clerk. The petition was filed March 4, 1925. In so signing the name of J. F. Laning to the certificate, Mr. Flynn was acting pursuant to no formal power of attorney, but under authority claimed by him through verbal direction of J. F. Laning, when discussing the affairs of the company with him about a month before.

After adjudication and election of the trustee, the administration proceeded, and the real estate of the bankrupt was offered for sale, as stated supra.

The plaintiffs in equity in Mercer county, after filing exceptions to the answer, proceeded no further with their action, and did nothing prior to filing their petition in this court. They had knowledge of the adjudication shortly after the order was made. Julia E. Freeble and J. F. Laning, directors, each had knowledge of the adjudication of the Farrell Realty Company as a bankrupt, immediately following the order. They also knew that the trustee was engaged in selling the lots of the company for a considerable period preceding the petition of Julia E. Freeble.

We further find as a fact that the Farrell Realty Company was insolvent at the time the petition herein was filed; also that the administration of the estate by the trustee has not been improvident.

[1, 2] In view of the facts established by the testimony, we find no difficulty in holding that, in so far as the petitions of Julia E. Freeble and the Farrell Realty Company are concerned, the rule should be discharged and the petitions denied. The petition purporting to be the petition of Julia E. Freeble is not actually such. "The voice is Jacob's voice, but the hands are the hands of Esau." As James L. Freeble admitted upon the witness stand, the petition would never have been filed, if the trustee had agreed to continue the sale of the lots to enable him to try to raise money to pay for lots he had "bid in" for his wife at the trustee's sale and for which she was unable to pay. He not only stood by and allowed the trustee to expend money and labor in preparing for sale, but he actively assisted in the advertisement and sale of the lots, and permitted innocent purchasers to buy and later improve them. He did not stop there, but purchased certain of the lots in his wife's name, and later sold them to others. It is only when he found himself unable to dictate the continuance of the advertised sale, in advance of it, in order that he might have opportunity to buy more lots, that he discovered that he had not received formal authority from the directors, and that consequently the adjudication was invalid.

To allow such unspeakable effrontery to succeed, even under the name of his wife, would stultify the court, and would allow form to triumph over substance. We are not satisfied that action in regard to future bankruptcy was not taken on or about February 4, 1925, by the directors, when Freeble and Laning, two of three directors, met and discussed the equity proceeding in the Mercer county court. True, both Freeble and Laning deny any such action, but, just before the petition in bankruptcy was filed, Freeble told Francis M. Flynn that the bankruptcy had been authorized by the board, and, strangely, the minute book of the company has disappeared; Freeble and Laning each alleging that it is in possession of the other.

But, assuming that no formal resolution was passed, that fact by no means requires us to vacate the adjudication. A president of a corporation, it is true, of his own motion cannot lawfully place the company in bankruptcy by means of a voluntary petition, and if he were to undertake to do so, and the adjudication were improvidently made, a bankruptcy court undoubtedly would have the power, upon seasonable petition, to vacate the adjudication. But where, as here, the petition was regular upon its face and

set forth proper authority, and directors and stockholders, cognizant of the facts, stood by for a period of six months without action, and allowed the rights of innocent persons to be affected, neither the corporation nor such stockholders can be permitted to succeed in an attempt to overturn the adjudication.

[3] The petition of the First National Bank of Williamsport et al. rests upon ground materially different from that on which the petitions of Julia E. Freeble and the Farrell Realty Company are founded. The allegation of the petitioners is to the effect that the petition of the Farrell Realty Company for adjudication as a bankrupt was filed to deprive the plaintiffs in the Mercer county equity proceeding of the remedies to which they were entitled under their bill, and thus was a fraud upon both the court of common pleas of Mercer county and this court.

We may agree with the legal proposition, laid down by the petitioners, that minority stockholders, upon allegation of fraud, may be heard in opposition to the adjudication of a corporation upon its voluntary petition. Zeitinger v. Hargadine-McKittrick Dry Goods Co. (C. C. A., 8th Cir.) 244 F. 719, 157 C. C. A. 167, 40 Am. B. R. 324 (certiorari denied, 38 S. Ct. 64, 245 U. S. 667, 62 L. Ed. 538). Nevertheless we feel constrained, under the facts of the instant case, to deny the prayer of the petitioners. Two reasons unite in controlling our judgment. The first, unimportant in view of our second conclusion, is that the petition of the minority stockholders was not presented in due time; and the second, that no such fraud has been shown in the voluntary petition as would require the court to annul the adjudication.

As to our first reason for denial of the petition, it will be noted that the petition was filed about six months *after* the adjudication. In the meantime secured creditors had been kept from enforcing their liens, a trustee had been elected and had partially administered the .estate, part of the real estate had been sold by the trustee, and purchasers of it had made improvements thereon. To revoke the adjudication at this time would materially injure creditors of the bankrupt and purchasers of its lots, and this —as we view the situation—without actual benefit to the minority stockholders. Even though such stockholders were ignorant of certain phases of the voluntary situation, and did not acquire information thereon until just prior to their petition for the annulment of the adjudication, the rights of others have become involved to the extent that it would be inequitable to set aside the adjudication,

even though fraud upon the court of common pleas and this court had been established.

[4] But we have been unable to find any such fraud from the testimony. It has been argued on behalf of the minority stockholders that the record establishes a conspiracy between Mr. Johnson, now trustee, and James L. Freeble, to deprive the petitioners of their remedies under their bill in equity in the common pleas court, and that the situation is parallel to that which resulted in the decision in Zeitinger v. Hargadine-McKittrick Dry Goods Co. (C. C. A., 8th Cir.) 244 F. 719, 157 C. C. A. 167, 40 Am. B. R. 324, supra. That case and the instant case present very different situations. In Zeitinger v. Hargadine et al., after long litigation, the local court had announced its findings and had declared its intention to appoint a receiver. The officers of the company, in schedules filed, showed two creditors, of three named, who were not actually creditors at all, and a sum of money in hand far more than sufficient to pay the actual debt. The court found that the petition was a mere device, without jurisdictional facts upon which to found it. Be it noted, also, that the petition was presented later on the very day of .the adjudication, and the court vacated the adjudication and heard the interveners, and later, despite its finding of fraud, it held that the minority stockholders could not be heard in opposition to the adjudication. The Circuit Court of Appeals held this position unsound.

In the instant case the adjudication was attacked after a partial administration of the estate. There was no fraud committed, but only a choice made as to the court which should actually administer an insolvent estate. That choice could have been enforced by creditors, even if the court of common pleas had gone to the extent of appointing a receiver, because the appointment of a receiver upon a bill, which alleges insolvency, inter alia, is an act of bankruptcy and would be a basis for an involuntary petition. Bankruptcy Act, § 3a(4), being Comp. St. § 9587.

The creditors of an insolvent estate are able to enforce the administration of the estate by a trustee chosen by themselves. To recognize this fact in advance of the appointment of a receiver by the court of common pleas, on the ground, in part, of insolvency, was to exercise common sense, rather than to commit a fraud. Here was no fabricated allegation to bring the estate into a bankruptcy court, but a situation that demanded such action.

The testimony taken pursuant to the rule indicates very clearly that the real estate of the realty company was very greatly overvalued in the schedules, and that the company was actually insolvent, as charged by the plaintiffs in the bill in equity filed in the court of common pleas. This being true, the order to vacate the adjudication and to remove the trustee, sought in each of the petitions filed, would do no good to the minority stockholders and much harm to the creditors.

Therefore the rule will be vacated, and the petitions denied.